**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **LARRY L. LA MAR,** | Civ. No. 15-cv-1988 (KM) |
| **Plaintiff,** | |
| **v.** | **MEMORANDUM OPINION** |
| **MIDFIRST BANK,** | |
| **Defendant** | |

**KEVIN MCNULTY, U.S.D.J.:**

Larry La Mar, as borrower and property owner, brings this action against a mortgage holder, Midfirst Bank. The action arises from a state court proceeding that resulted in a final judgment of foreclosure. Midfirst moves under Fed. R. Civ. P. 12(b)(1) to dismiss the complaint on *Rooker-Feldman* jurisdictional grounds, and under Rule 12(b)(6) to dismiss it for failure to state a claim. (ECF no. 3) For the reasons stated below, the motion will be granted.

**The complaint**

The allegations of the complaint ("Cplt.," ECF no. 1) are as follows.

Mr. La Mar is, or was, the owner of a residential property at 237 E. 6th Avenue in Roselle, New Jersey. On June 16, 1997, he obtained a loan in the amount of $164,985. It was secured by a mortgage insured by the Department of Veterans Affairs, which came to be serviced by Midfirst. In 2012, he defaulted on his mortgage payment. At some point he tried to cure the default by sending a check for $4286, which was not accepted. (Cplt. ¶¶ 12, 13) His attempts to negotiate a modification of the loan were unsuccessful. (Cplt. ¶ 13)

The complaint alleges that Midfirst did not fulfill certain preconditions to foreclosure. La Mar alleges that a October 1, 2013, letter of default did not, as

1

required by the Security Deed, state "a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured," or warn "that failure to cure the default on or before the date specified in this notice may result in acceleration of the sums secured ....."[1] (Cplt. ¶¶ 16–18) Nor did Midfirst, as required by VA regulations, "reach[] out to the borrower, including through a face to face meeting if no repayment plan has been reached, as well as a letter outlining loss mitigation options, and discuss and evaluate loss mitigation option. 38 C.F.R. § 36.4350(f), (g), (h)." (Cplt. ¶¶ 20–21) Nor did Midfirst, upon default, "notify the Secretary of HUD." (Cplt. ¶ 22 (citing 38 U.S.C. § 3632(a)(2), (3), (4)))

The four counts of the complaint are based on the same underlying facts, outlined above:

- Count 1 of the complaint seeks a declaratory judgment that, because of the alleged flaws described in the preceding paragraph, Midfirst did not fulfill "conditions precedent" to the commencement of foreclosure proceedings, and that the foreclosure was "prematurely commenced."
- Count 2 seeks damages for breach of contract in that Midfirst did not comply with the Security Deed and VA regulations as described above, but prematurely went ahead with foreclosure. As a result, plaintiff allegedly lost the value of the property, suffered damage to his credit rating, and also suffered medical and psychological complications.

---

[1] It is unclear what "Security Deed" the Plaintiff is referring to. Further, the October 1, 2013 letter does not seem to have been the notification of default upon which Midfirst relied in the foreclosure. In the state court foreclosure action summary judgment motion, Midfirst submitted a copy of another default letter, dated November 17, 2011, which does contain the warnings alleged to be missing from the October 1, 2013 letter (which dates from *after* the filing of the foreclosure complaint on August 12, 2012 (ECF no. 3-5)). This, however, carries us beyond the scope of a motion to dismiss and into the realm of fact more appropriate for summary judgment.

- Count 3 alleges negligence *per se* based on the alleged noncompliance with the statute and VA regulations. The alleged damages are the same as those claimed under Count 2.
- Count 4[2] asserts a claim under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692. The noncompliance with the Security Deed and VA regulations is alleged to be wrongful and deceptive means of collecting a debt. The alleged damages are the same as those claimed under Count 2.

**Procedural history of the state foreclosure proceedings**

In summarizing the proceedings in the state court foreclosure action, I rely on copies of pleadings and orders filed in that proceeding, which are attached to Midfirst's papers. For the reasons stated below, *see* p. 7, *infra*, I may take judicial notice of them, and they may in any event be considered as matters upon which La Mar's federal complaint is based. La Mar has not disputed the authenticity of these documents or opposed the court's consideration of them (although of course, in many cases he may disagree with the contents). I do not consider them for the truth of factual contentions made therein, but only as evidence of the issues that were raised and decided by the State court.

The pleadings establish the following procedural history:

1. On August 12, 2012, based on the prior default, a foreclosure complaint was filed in Union County Superior Court under Docket No. F-15374-12. (ECF no. 3-5)

2. On September 7, 2012, Mr. La Mar filed a 30-page answer with affirmative defenses and counterclaims. (ECF no. 3-6)[3]

---

[2]     This, the fourth count in the complaint, is designated as the seventh, which I take to be a simple numbering error. I will refer to it as Count 4.

[3]     As to each count, the Answer cites the plaintiff's "failing to meet the require conditions precedent to Plaintiff's right of action."

The Affirmative Defenses most pertinently state that (a) defendant violated plaintiff's rights by "filing this foreclosure before offering Defendants any of the federally required foreclosure avoidance options" (although they do not specifically cite

the VA regulations cited in the federal complaint); and (b) that acceleration of the debt is unjust because of "misleading and fraudulent conduct and unfulfilled conditions."

The Counterclaims are multifarious and lengthy. La Mar asserts them as "compulsory counterclaims," *i.e*, ones required to be joined. They allege as follows:

(a) Count One: "Conversion" by collecting a debt that is not in default. (p.12) This is said to be, *inter alia,* a violation of the FDCPA, 15 U.S.C. § 1692.

(b) Count Two: similar to Count One, but directed to personal property.

(c) Count Three: violation of federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and Regulation Z, 12 C.F.R. § 226. This alleges that the lender failed to supply two sets of certain documents at the consummation of the transaction (presumably in 1997), and that Midfirst is not the legitimate holder of the mortgage. It adds that Midfirst failed to accommodate the lender and forbear in accordance with HUD regulations.

(d) Count Four: This alleges invalidity of the assignment of the mortgage and "robo-signing" of the foreclosure papers.

(e) Count Five: Plaintiffs never actually received the loan, which was used to retire fraudulent prior liens on the property.

(f) Count Six: An accounting will prove that defendant never loaned plaintiffs any money.

(g) Count Seven: Claim based on "fractionalized banking."

(h) Count Eight: Defendant is not a holder in due course.

(i) Count Nine: Defendant has filed fraudulent documents with the County Recorder's Office.

(j) Count Ten: Fraud on the court in that defendant represents itself as a holder in due course.

(k) Count Eleven: Default because defendant never supplied the money for the loan.

(l) Count Twelve: Fraud and racketeering in that defendant has deprived the State of New Jersey of tax revenue.

(m) Count Thirteen: Fraud and racketeering based on failure to disclose the "true lender" at closing involving misrepresentations about "pass through" entitities.

(n) Count Fourteen: Violation of the Patriot Act, and various infractions involving pooling.

(o) Unnumbered allegation of "Opportunity to Cure upon which relief can be granted." This amounts to a demand that the defendant pay all amounts demanded by the counterclaim within 35 days.

Damages of $10,000 per count (or category of injury, such as fraud, denial of due process, public humiliation, etc.), are demanded.

3. On March 28, 2013, Midfirst filed a motion for summary judgment and other relief. (ECF no. 3-7) On April 17, 2013, La Mar filed an opposition to that motion. (ECF no. 3-8)

4. On June 4, 2013, Midfirst's motion was granted, the answer and counterclaims were struck, and the matter was referred to the Office of Foreclosure of the Superior Court to proceed as an uncontested matter. (ECF no. 3-9)[4]

5. On May 23, 2014, La Mar filed motions to dismiss and for other relief. (ECF no. 3-10) This seemingly was treated as an objection to the entry of final judgment. The Office of Foreclosure found no relevant grounds, but advised La Mar that motions (meaning, apparently, those raising grounds beyond the scope of an uncontested proceeding in the Office of Foreclosure) could be submitted to the General Equity Judge. (ECF no. 3-11)

6. On September 14, 2014, the state court entered a final judgment of foreclosure. (ECF no. 3-12)

7. On September 23, 2014, Mr. La Mar filed a "Motion to Dismiss Motion for Final Judgment and Objection." (ECF no. 3-13) This was treated as a motion to vacate the judgment and denied by order filed November 19, 2014. (ECF no. 3-14)

**Standard on a motion to dismiss**

Defendants have moved to dismiss the Complaint for lack of jurisdiction, citing the *Rooker-Feldman* doctrine (*see infra*). Rule 12(b)(1) governs jurisdictional challenges to a complaint. These may be either facial or factual attacks. *See* 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege sufficient grounds to

---

[4] New Jersey is a judicial foreclosure state, and foreclosure actions are filed in Superior Court (centrally, in Trenton). A defendant may interpose defenses: *e.g.,* that the mortgage was induced by fraud, recoupment, lender liability, violation of applicable HUD regulations. *See* S.B. Pressler & P.G. Verneiro, N.J. Ct. R. annot. 4:64-1, comment 3.3. Whether the action proceeds in court or goes to the Office of Foreclosure depends on whether it is a "contested" action. An "uncontested" action is one in which (1) all defendants have failed to answer or plead; or, as relevant here, "(2) none of the pleadings responsive to the complaint either contest the validity or priority of the mortgage or lien being foreclosed or create an issue with respect to plaintiff's right to foreclose it; or (3) all the contesting pleadings have been stricken or otherwise rendered noncontesting." N.J. Ct. R. 4:64-1(c).

establish subject matter jurisdiction. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). A court considering such a facial challenge assumes that the allegations in the complaint are true, and may dismiss the complaint only if it nevertheless appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa*, 67 F. Supp. 2d at 438.

Defendants have also moved to dismiss the Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (traditional "reasonable inferences" principle not undermined by *Twombly, see infra*).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard

is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

In connection with the motions, Midfirst proffers materials extrinsic to the complaint. These consist of records of the state court foreclosure proceeding. These are cited, not for the facts contained therein, but only in order to establish the nature and scope of prior proceedings between the parties, and the rulings of the state court. Such records are subject to judicial notice:

> [O]n a motion to dismiss, we may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991); *see also Funk v. Commissioner*, 163 F.2d 796, 800–01 (3d Cir. 1947) (whether a court may judicially notice other proceedings depends on what the court is asked to notice and on the circumstances of the instant case).

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999). *See generally* Fed. R. Evid. 201.

Even setting aside judicial notice, certain records of the foreclosure action may be considered without converting a facial Rule 12(b)(1) challenge into a factual one, or a Rule 12(b)(6) motion into one for summary judgment. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'") (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).[5]

---

[5]    Indeed, where a complaint is based on particular documents, a defendant may submit and rely on such documents in its motion to dismiss. The reasons for the rule are (1) that the plaintiff, having relied on the document, cannot claim unfair surprise; and (2) the plaintiff cannot base a claim on a document while shielding the document itself from view:

Where the plaintiff, like Mr. La Mar, is proceeding *pro se*, the complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.,* 704 F.3d 239, 245 (3d Cir. 2013). "While a litigant's pro se status requires a court to construe the allegations in the complaint liberally, a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted).

## Analysis

### 1.   *Rooker-Feldman*

Midfirst moves to dismiss the complaint under the *Rooker-Feldman* doctrine. Although the motion is brought under Rule 12(b)(6), this is a jurisdictional issue, so I consider it under Rule 12(b)(1).

A federal district court does not sit to hear appeals from state court judgments. Thus *Rooker-Feldman* holds that lower federal courts cannot entertain federal claims that (1) were previously adjudicated in state court or (2) are inextricably intertwined with a prior state court decision. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923); *Guarino v. Larsen,* 11 F.3d 1151, 1156–57 (3d Cir. 1993); *Port Auth. Police Benev. Ass'n v. Port Auth.*, 973 F.2d

---

What the rule seeks to prevent is the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent.

*Burlington,* 114 F.3d at 1426 (on 12(b)(6) motion to dismiss securities fraud complaint alleging misstatements in annual report, court may examine the report itself). The very substance of the complaint is based on the mortgage and note and the alleged illegality of the state foreclosure proceedings. The mortgage and note, and the publicly filed pleadings and rulings of the court in those foreclosure proceedings may therefore be considered.

169, 178 (3d Cir. 1992). The first alternative, actual adjudication, requires little explication. As for the second, a federal claim is "inextricably intertwined" with a prior state court decision if "granting the relief requested in the federal action requires determining that the state court's decision is wrong or would void the state court's ruling." *FOCUS v. Allegheny County Court of Common Pleas.*, 75 F.3d 834, 839-40 (3d Cir. 1996).

*Rooker-Feldman* thus operates to prevent a disgruntled party in state court litigation from collaterally attacking the results of that litigation in federal court, claiming constitutional or other error. *See also B.S. v. Somerset County*, 704 F.3d 250 (3d Cir. 2013). To put it another way, *Rooker-Feldman* bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus., Inc.*, 544 U.S. 280, 284 (2005).

A judgment of foreclosure was entered in New Jersey Superior Court on September 14, 2014. (ECF no. 3-12) That state court judgment well preceded the filing of this action on March 8, 2015.[6] The question now is whether the

---

[6]     Judge Wolfson has usefully summarized the law establishing that a state court foreclosure judgment, even if steps such as a sheriff's sale remain to be taken, is final for purposes of New Jersey law and *Rooker-Feldman*:

> That the foreclosure judgment had been entered is sufficient to invoke *Rooker-Feldman*. Under New Jersey law, a mortgage foreclosure suit determines the right to foreclose and the amount due on the mortgage. *Sheerer v. Lippman & Lowy*, 125 N.J.Eq. 93, 4 A.2d 273 (E. & A.1939); *Central Penn Nat'l Bank v. Stonebridge, Ltd.*, 185 N.J.Super. 289, 302, 448 A.2d 498 (Ch.Div.1982). *See generally* 30A N.J. Prac. Law of Mortgages § 31.25. The foreclosure judgment also entitles the mortgagee to recover, by way of Sheriff's sale, the amount due from the land subject to the mortgage. *See* N.J.S.A. 2A:50–36; *First Union Nat'l Bank v. Penn Salem Marina, Inc.*, 383 N.J.Super. 562, 570, 893 A.2d 1 (App.Div.2006) *rev'd on other grounds by* 190 N.J. 342, 921 A.2d 417 (2007). Indeed, the terms of a mortgage foreclosure judgment will include "an order to sell so much of the mortgaged premises as will be sufficient to satisfy the mortgage and subordinate liens ... and that an execution issue ... commanding the [sheriff] to make sale...." 30A N.J. Prac. Law of Mortgages § 31.25.

claims in this federal court action are "inextricably intertwined" with that state foreclosure proceeding. "If the relief requested in the federal action requires determining that the state court's decision is wrong or would void the state court's ruling, then the issues are inextricably intertwined and the district court has no subject matter jurisdiction to hear the suit." *FOCUS*, 75 F.3d at 840. As to federal actions following mortgage foreclosures, the case law gives some guidance.

*In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009), for example, considered a post-foreclosure federal claim for rescission of the mortgage. A finding that no valid mortgage existed, the Court held, would eliminate the basis for the prior foreclosure judgment. Such a claim is an easy case for application of *Rooker-Feldman*. A federal claim that the state foreclosure court entered its judgment in the absence of personal jurisdiction is likewise barred by *Rooker-Feldman*. Because such a plaintiff "can only prevail if a federal court concludes that the state courts' default judgments were improperly obtained," his claim is inextricably intertwined with the state proceedings. *In re Knapper*, 407 F.3d 573, 581 (3d Cir. 2005). *See also Ayres-Fountain v. E. Sav. Bank*, 153 F. App'x 91, 92 (3d Cir. 2005) (barring post-foreclosure federal claim for rescission of mortgage and damages); *Moncrief v. Chase Manhattan Mortgage Corp.*, 275 F. App'x 149, 153 (3d Cir. 2008) (barring a claim for "redress" of state court judgment in a foreclosure action).

Under these precedents, Count 1 is clearly barred. It seeks a declaration that would in effect invalidate the foreclosure judgment. It implicates the validity of the procedures leading to the foreclosure, as well as the foreclosure proceeding itself. In short, it is fatally intertwined with the forfeiture judgment. *Rooker-Feldman* clearly applies to Count 1's quest for a declaration that the state foreclosure action was invalidly commenced.

---

*Patetta v. Wells Fargo Bank, NA*, Civ. No. 09-2848, 2010 WL 1931256, at *7 (D.N.J. May 13, 2010).

That leaves Counts 2, 3, and 4. As to these, some line drawing is required; a court may find that portions of these claims are barred, while others are not. *Madera,* for example, after applying *Rooker-Feldman* to bar a claim for rescission, then considered a cause of action for damages based on the title insurer's alleged failure to disclose the correct title insurance charge, in violation of the Truth in Lending Act ("TILA"). As to that claim, *Madera* did not apply *Rooker-Feldman,* but proceeded to the merits of the bankruptcy court's grant of summary judgment. 586 F.3d at 232. In *Easley v. New Century Mortgage Corp.*, 394 F. App'x 946 (3d Cir. 2010), the Court upheld the application of *Rooker-Feldman* to claims that, if granted, would imply that the foreclosure judgment was invalid. Other claims, however, were not decided by the state court and were based on "allegations of fraud, deception and other wrongs which pre-dated the foreclosure action," as to which plaintiff sought consequential damages. *Id.* at 948. These were not so clearly intertwined with the foreclosure judgment as to be barred by *Rooker-Feldman.* (*Easley* held, however, that the claims not barred by *Rooker-Feldman* were barred by *res judicata. See infra.*)

As to Count 2, 3, and 4, the application of *Rooker-Feldman* is mixed. All seek damages consisting of "the value Plaintiff's property." (Cplt. ¶ 44) To that extent, they are clearly aimed at undoing the judgment of foreclosure or declaring it invalid. But these counts also seem to allege that breaches of the Security Deed procedures, VA regulations, or the FDCPA are independent wrongs from which more specific damages flowed. To the extent that Counts 2, 3, and 4 seek such specific damages that do not depend on a contention that La Mar was wrongfully ousted from his property, I will deny the motion to dismiss them on jurisdictional grounds. These claims for damages are jurisdictionally sustainable to the extent they do not attack the state court foreclosure judgment.

The motion to dismiss on *Rooker-Feldman* jurisdictional grounds is therefore granted as to Count 1, and granted in part as to Counts 2, 3, and 4. I

11

now move on from the Rule 12(b)(1) component of Midfirst's motion and discuss the Rule 12(b)(6) component.

### 2.    Res Judicata

Midfirst states that, to the extent Counts 2, 3, and 4 pass the bar of *Rooker-Feldman,* they are nevertheless barred by *res judicata* and New Jersey's entire controversy rule. I will deny the motion as presented. *Res judicata* is an affirmative defense, which usually is not appropriate for resolution on a motion to dismiss:

> We held in *Bethel v. Jendoco Constr. Corp.,* 570 F.2d 1168, 1174 (3d Cir.1978), that if a statute of limitations "bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." This holding applies not only to a statute of limitations defense, but also to any affirmative defense raised pursuant to Rule 8(c), including res judicata and the Entire Controversy Doctrine.

*Rycoline Products, Inc. v. C & W Unlimited,* 109 F.3d 883, 886 (3d Cir. 1997). I do not find it appropriate for resolution here.

I note that, although Midfirst attaches many of the relevant state court records, one item is missing: the oral statement of reasons accompanying Judge Kessler's order of June 14, 2013, granting summary judgment and declaring the foreclosure uncontested. (ECF no. 3-9) That statement of reasons may (or may not) provide critical context. If for example, counterclaims were dismissed because they were not "germane" and could not be heard in a foreclosure proceeding, that would be one thing;[7] if they were dismissed on the merits, that would be another.

---

[7]    N.J. Ct. R. 4:64-5 limits permissible claims in mortgage foreclosure actions to those which are "germane" to the foreclosure:

4:64-5. Joinder of Claims in Foreclosure

Unless the court otherwise orders on notice and for good cause shown, claims for foreclosure of mortgages shall not be joined with non-germane claims against the mortgagor or other persons liable on the debt. Only germane counterclaims and cross-claims may be pleaded in foreclosure actions without leave of court. Non-germane claims shall include, but not be limited to, claims on the instrument of obligation evidencing the

Midfirst states in its brief that the counterclaims in the foreclosure proceeding were identical to the claims raised here. That is an exaggeration, although I do see a family resemblance. *See* summary at pp. 3–5, *supra*. If La Mar's claims are to be precluded, it must be because they could have been, but were not, raised in the prior state foreclosure action. Neither claim preclusion nor New Jersey's entire controversy doctrine will apply to claims that could not have been brought in the prior proceeding because they were not "germane." *See, e.g., Coleman v. Chase Home Fin., LLC ex rel. Chase Manhattan Mortgage Corp.*, 446 F. App'x 469 (3d Cir. 2011); *Dennis v. MERS/Merscorp Mortgage Elec. Registration Sys., Inc.*, Civ. No. 11-4821, 2011 WL 4905711, at *1 (D.N.J. Oct. 13, 2011); *Zebrowski v. Wells Fargo Bank, N.A.*, Civ. No. 07-05236, 2010 WL 2595237, at *6 (D.N.J. June 21, 2010); *Joan Ryno, Inc. v. First Nat. Bank of S. Jersey*, 208 N.J. Super. 562, 570, 506 A.2d 762, 766 (App. Div. 1986). *See generally Leisure Technology–Northeast v. Klingbeil Holding Co.*, 137 N.J. Super. 353, 349 A.2d 96 (App. Div. 1975) (seminal discussion of what claims are "germane").

Lacking a complete context, I am reluctant to opine in the abstract about whether these federal claims could or should have been excluded as non-germane under New Jersey procedure. It may be, after all, that these claims, or others like them, *were* excluded. Or the state court may have considered whether they were defenses to foreclosure, but excluded them insofar as they constituted independent claims for damages. Other facts, procedural and substantive, may turn out to be relevant as well. I simply do not know.

In such a case, exercising my discretion to convert the motion to one for summary judgment would be fruitless. *See* Fed. R. Civ. P. 12(d). Instead, I take the second option of "den[ying] the motion without prejudice to renew in the

---

mortgage debt, assumption agreements and guarantees. A defendant who chooses to contest the validity, priority or amount of any alleged prior encumbrance shall do so by filing a cross-claim against that encumbrancer, if a co-defendant, and the issues raised by the cross-claim shall be determined upon application for surplus money pursuant to R. 4:64-3, unless the court otherwise directs.

form of a motion for summary judgment pursuant to Fed. R. Civ. P. 56."
*Rycoline*, 109 F.3d at 886.

The motion to dismiss on *res judicata* grounds is therefore denied.

### 3.   Count 4 (FDCPA)

Midfirst contends that Count 4, which asserts claims under the Fair
Debt Collection Practices Act, is barred by that statute's one year statute of
limitations. The statute of limitations, like res judicata, is an affirmative
defense. It may, however, be a proper subject of a motion to dismiss where the
relevant facts appear on the face of the complaint or other documents properly
considered on a 12(b)(6) motion:

> A statute of limitations defense may be properly raised on the
> pleadings when the date on which the alleged claims accrued is
> apparent from the face of the pleading, public filings, or other
> documents integral to the complaint. *McPherson v. United States*,
> 392 Fed. Appx. 938, 943 (3d Cir. 2010).

*Arthrex v. KFx Med., LLC*, Civ. No. 15-6580, 2016 WL 206296, at *4 (D.N.J.
Jan. 15, 2016). *See also Rycoline,* 109 F.3d at 886.

This is such a case, and I will grant the motion to dismiss. On the
chance that this is merely a case of deficient pleading, that dismissal is without
prejudice to the submission, within 30 days, of an amended counterclaim that
remedies the deficiencies in Count 4 that are identified here.

The FDCPA prohibits certain unfair or deceptive practices in connection
with the collection of a debt. *See* 15 U.S.C. § 1692. (I assume without deciding
that the statute potentially applies to Midfirst's acts here.) These include
misleading communications, harassing collection tactics, and the like. The
violator may be liable for actual damages sustained as a result of a violation, or
statutory damages not exceeding $1000. 15 U.S.C. § 1692k(a).

Any claim under the FDCPA must be brought "within one year from the
date on which the violation occurs." 15 U.S.C. § 1692k(d). This federal action
was filed on March 8, 2015. Alleged violations on or before March 8, 2014, are
therefore time-barred.

14

The complaint alleges that Midfirst violated the FDCPA by failing to provide notice in the form required, and by failing to comply with VA regulations. (Cplt. ¶ 54) No dates are given. The gist of the complaint, however, is that the foreclosure was "prematurely" filed on August 12, 2012, without satisfaction of those required preconditions. Giving the benefit of the doubt, the complaint also alleges that the letter of October 1, 2013 was legally inadequate; plaintiff may be saying that this, too, violated the FDCPA. In any case, however, more than a year passed between the alleged violations and the filing of this action on March 8, 2015.

The motion to dismiss Count 4 based on the statute of limitations is therefore GRANTED. Because plaintiff is *pro se,* and because the futility of amendment is not readily apparent, this dismissal is without prejudice to the filing, with 30 days, of an amended complaint that identifies any FDCPA violations occurring within the one-year limitations period (*i.e.,* after March 8, 2014).

## CONCLUSION

Defendant's motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1), for lack of jurisdiction under the *Rooker-Feldman* doctrine is GRANTED IN PART, to the following extent: Count 1, in its entirety, is DISMISSED WITH PREJUDICE for lack of jurisdiction. Counts 2, 3, and 4, to the extent they attack the judgment of foreclosure, or seek the value of the property as damages, are DISMISSED IN PART WITH PREJUDICE for lack of jurisdiction. To the extent Counts 2, 3, and 4 assert independent claims for damages as a result of the particular violations alleged, the motion to dismiss them is DENIED.

Defendant's motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim is GRANTED to the following extent: Count 4 is DISMISSED on statute of limitations grounds WITHOUT PREJUDICE to the submission of an amended complaint within 30 days. The motion is otherwise

DENIED without prejudice to renewal of the res judicata/entire controversy issues on summary judgment.

Dated: March 7, 2016

KEVIN MCNULTY
United States District Judge